and Kate Nesbitton, P.C., defendants at the lead. Arguing on behalf of the defendants, Mr. Barry L. Gaskin. Arguing on behalf of the at the lead, Mr. Richard C. Patterson. Thank you. Mr. Gaskin. Mr. Gaskin, you may proceed. Good morning, Your Honors. Good morning. Mr. Harris, Mr. Cook. May it please the Court. My name is Barry Gaskin, and I represent the plaintiff appellant, Thomas Nulte, in this case. This appeal arises from a medical malpractice case the plaintiff filed in relation to an injury, a chiropractic adjustment to his spine that occurred on October 27, 2021. There's really one primary issue in this case before the Court today, and that is whether the trial court's denial of the plaintiff's Rule 9D2 request to deem the complaint timely was erroneous. Tied to that issue is whether the Court erred when it dismissed the plaintiff's complaint as untimely. If I heard you say that the trial, it's whether the trial court erroneously determined that the filing was untimely? I believe the first inquiry is whether the trial court erred when it denied plaintiff's motion under Rule 9D2. The question is whether it was an abuse of discretion. Correct, Your Honor. Yes, correct. It's not a de novo review. Yes. Are you familiar? Let me ask you this. Is there any case that stands for the proposition that attorney oversight or mistakes can constitute good cause? Is there a case in Illinois that says that? The Vision Point case, which this case cites in Kilpatrick. I don't believe it cites that proposition. It doesn't because I've looked very hard for a case that excuses the types of mistakes that took place in this case. I have a quote from the Supreme Court in Silverstein v. Brander. It was a different issue, the way jury demand, but good cause is good cause. Inadvertence or mistake does not constitute good cause, even in the absence of prejudice to the other parties. Is there a case that stands for the proposition that attorney mistakes can constitute good cause? Yes, I believe the Vision Point case, which is a Supreme Court case from 2007, states that an attorney's mistake can be considered. And what was the mistake in that case? It was in late, it was a Rule 183 issue. It was a late, it was a late filing, I believe, of a request to admit. It was a request to admit facts. I believe it was, Your Honor. Yes. But the Vision Point case did stand for that proposition that a mistake can be part of the inquiry in a good cause analysis. And, of course, I wouldn't quarrel with that, but here the trial court didn't find good cause and we're, I don't want to use the word stuck, but the standard of review is abuse of discretion. It's hard to, we can't substitute our judgment in a ruling we might have made had we sat on the trial court. We need to give deference to the judge.  And then I'm sure you're going to get to it, but the subsequent amendment to the rule that says that the court and clerk of court are not required to ensure the accuracy of your data and contents. I'm sure you're going to address that, but I just want to let you know that's a concern of mine. Well, I can address that, the second point. Now, I'm not, our position is not that the court has to ensure the accuracy. Our position more stems around when you file initially, you get an e-mail back from the clerk stating you will learn in 24 to 48 hours whether your filing is accepted or rejected. Nobody wants to make a mistake. No lawyer wants to make a mistake, but mistakes will happen. I think there should be some reliance on this 24 to 48 hour window. And I think if we take this to an extreme example, suppose we filed two weeks earlier and, you know, the court still didn't get back to us for two weeks and said, oh, you're pleading as rejected. Well, we certainly filed early enough to expect that we would get this response within 24 to 48 hours, but we'd still be out of luck just because of a mistake. Well, were I in the trial court and dealt with that issue, I'd have to admit that a question of mine would be, why would you wait two weeks before you checked? Because ultimately, it's a heavy burden, but it is the burden of the filer to get it done timely, especially where the deadlines have serious consequences. So ultimately, and I think the rule kind of says that. Well, in this case, I did inquire. I personally handled this at the lower level, and I did inquire the following week. It was five days or so. I inquired on the 7th or 8th days later. November 2nd. November 2nd. So we submitted on the 25th, so I believe it was one week later I inquired, and they said, there's just a backlog. There's a delay. It was really not an answer. So, you know, I felt I just had to wait to get it back. But, you know, I believe this case is different from Kilpatrick. It's different from the most recent Matios case that I believe came down maybe three weeks ago, where we did not wait until the last possible day. Those cases, if you wait until the last possible day and the clerk says we'll give you an answer in two days, well, then you should know you're out of luck. But in our case, we filed, we submitted for filing on the 25th of October with the administrative order that was in place we had until the 30th of October. We had five days. Doesn't Kilpatrick and other cases stand for the proposition that if you wait until the statute is almost drawn, you do so at your own peril? Well, that type of language is in there, but I think it's a matter of degree. At some point, I believe it has to become a matter of degree. Here we didn't wait until, you know, I think one of these cases they waited, they had like 11 hours left. Matios was the last day. They maybe had seven hours left. We had five calendar days left. So this was not a midnight filing. This was not a last second filing. There were, as you've read, and I don't want to lean on this, there were other circumstances going into my life, unfortunately, right before this was all happening, which, you know, was disruptive to my life and to my family. So I, and I think under totality of the circumstances analysis, which we do look at in this type of case, I think there's a lot of factors that. We look at also, we look at prejudice to the other parties. Yes. I know the lower court looked at that as well and really found no prejudice. I think the lower court made that factual finding in the record. So every case is different. And that's why we're guided to look at a totality of the circumstances. There's no hard line rule. That's why I think under the circumstances of this case, what was going on before it, you know, filing five days before, not getting a response from the clerk for two weeks. I think in this particular set of circumstances, good cause exists. The trial court did consider, you know, the loss of your father. Yes. But found that that was not sufficient. Correct. Correct. I think the trial court abused his discretion. An abuse of discretion can be found where a decision is unreasonable under the circumstances. And I think that under the circumstances of this particular case, I think it was unreasonable that if you read the trial court's. . . Even if we were to determine that the trial court somehow was unreasonable, we have to look at it from the perspective of whether or not anybody else or any other reasonable person would also disagree, that no reasonable person would accept the trial court's judgment here. Yes. I understand. It's a reasonable person. Right. Right. And, you know, my position is that no reasonable person should find the way the trial court did under the circumstances of this case. Considering all the errors and mistakes that were made. . . Well, the complaint. . . Is there a district. . . take that back. Is there a circuit court that does not require, for example, ARDC number or ARDC number to be on your filings? That I don't know. That I don't know. I know Lake County does. It's a longstanding rule in Lake County, that's for sure, right? Yes. Yes. Yes. Again, look, this was not, obviously, an intentional thing happening. Would I like to go back in time and include it? Whether intentional or not, that's not the standard. I understand that. I understand that. It's a mistake. It was a mistake. But as I stated, the Supreme Court, the vision point said mistakes can be considered. A mistake is part of the analysis.  It's not the sole analysis, right? Yes, I agree. I agree. I've already spoken to how I think this case is different than Kilpatrick and Mateos, if I'm pronouncing that correctly. That seemed to really be the. . . Pardon me. Are you talking about Kilpatrick? Kilpatrick. I thought you mentioned that they were different, but I don't know that you necessarily explained it except in your brief. Okay. Well, I can't discuss that further. Kilpatrick, there's a few really important distinguishing factors from Kilpatrick. Kilpatrick filed on the last, the very last day, submitted for filing the very last day, 11 hours before the statute. We filed on a Wednesday. We had until 1159 on the following Monday to get it on file. So we filed it five days early. Kilpatrick also got the same response upon filing from the clerk's office. You will be notified within 24 to 48 hours if it's accepted or rejected. The problem with Kilpatrick is even if we had notified him within the 24 to 48 hours, which I think they actually did, he didn't have time to cure. He wouldn't have had time to cure. He didn't set it up so he would have given himself time to cure. We did give ourself time to cure if we had received notification within the two days. Kilpatrick did not even file, refile, on the date of the rejection. Kilpatrick waited until the next day to refile. We refiled in less than an hour. So this 24- When you say you refiled in less than an hour, but refiled with mistakes. There were mistakes with the 622 affidavit. I believe the court said it should not have been filed as an affidavit with the clerk. And there was a mistake with the report because the report didn't have the case number or the case name on it. That I would submit as a different inquiry. Courts have the ability- If I were to timely file a complaint, a Med-Mal complaint, without a report, without an affidavit, courts do have the ability to give an extension for that. There's a case law on that that I could cite. Courts have the ability to dismiss the case, but without prejudice in that instance, giving the plaintiff an opportunity to refile with the affidavit and the report. So I see that as a separate inquiry from whether the complaint itself got on file. Well, the 622 filing was essentially just paraphrased what was in the complaint, right? Yes. So it was, for the sake of a better word, it was duplicative. I mean, duplicative to the point where whatever's in the report or the affidavit is outlined. There's no misgiving to the defendant. But you are correct that, yes, there was, you know, the clerk said it shouldn't have been filed as an affidavit. Although, interestingly enough, when I finally did resubmit it as an affidavit, which the clerk accepted it as an affidavit. The first time it rejected it because I filed it as an affidavit. The second time, after I got a case number that I could attach to it, I filed it separately as an affidavit, and the clerk accepted it. So I'm not really sure. Counsel, are you arguing equitable tolling or equitable estoppel? I mean, the basis of my argument was not. You may continue. I see. The basis of my argument was not either one of those. Mine was just a good cause argument. If that's your argument, equitable, it would not be equitable estoppel because, you know, that would have supposedly put you in a position where you would have been mildly, if not egregiously, misinformed or reliant. Equitable tolling relates to facts and circumstances that are unusual that don't relate to anything that the other party did. It's whether or not, under the circumstances of what you or your client did, would be so extraordinarily unfair that you or your client should be entitled to relief. And one of the provisos is that you are diligent or whomever is responsible for doing whatever it was is diligent. There's only been one case of equitable tolling in the state of Illinois, I believe, at least only one Supreme Court decision that granted relief, and that was in part because there was a factor that would deem appropriate to consideration under estoppel, and that was that the party to be charged, the plaintiff, was not sent a notice telling her that she had 90 days to apply for compensation for the fact that she was fired. Or I should say the entire company closed down and all the employees were fired. So you've got a pretty difficult position to convince any court that what you're asking for is mundane or ordinary or normal, because it's just the facts have to be, if we're talking about not an estoppel, they have to be very extreme. And so that's the reason why I was asking you, because if equity is much more willing to or granting you equitable relief would be much more probable if you could establish that there was something that the other side had done or didn't do that should have been done that would have put you in a position where you were being prejudiced. So that's why I asked. No. I wish I could say that defense counsel told me don't worry about it, file it late, but that didn't happen here. I understand it's a high bar, but I think, again, based on the totality, which we have to look at case by case, I think this is a special case. I think it's different from Kilpatrick and Mateos. I know my time has been up. I just wanted to ask just one real quick question. Does the late service play any role in our analysis here? The 103B? Yeah. No. I don't believe it does. And if I could address that a little more in depth. Excuse me.  First of all, this motion, the 103B was never raised below. It was argued for the first time on appeal by the defense. There's no record that's been established below with regard to 103B. I know in their brief they claim we never contacted the clerk's office. We didn't contact the clerk's office. That's in the record. They never referenced the initial summons that was issued. They only referenced the alias summons, but there was an initial summons issued. The chiropractic clinic had closed its doors a few weeks after we filed a complaint. So, you know, it took time to locate them. They had moved to a different county, I believe. But, again, it was never raised below. I don't believe it's an issue. I don't think there is a record, other than what I supplemented in my brief, which I think shows diligence, frankly. But in conclusion, Your Honors, I appreciate your time listening today. We would ask that this court find that the lower court did abuse its discretion in denying our 9D2 motion and thereby abuse its discretion in dismissing the complaint as untimely, and we ask that the court remand this matter to the court below for further proceedings. Thank you. I have an opportunity to make rebuttal. Thank you, Your Honor. Mr. Heron, you may proceed. Good morning, Your Honors. May it please the court. Counsel. Good morning, Counsel. My name is Richard Harris. I represent the defendant, Eppley Lapp, chiropractic. I'll be arguing on behalf of the defendants and Eppley's, including Ms. Vestigin. Just a couple quick points. The 103B issue was raised below, I believe, in the record at page 163. The argument was brief, but I believe my colleague argued that late service was unreasonable, violates Rule 103B, and warrants dismissal. Although, as you pointed out, Justice Burkett, you were able to affirm on any basis in the record. Another housekeeping matter, as to whether counsel inquired with the court on November 2nd, I don't believe that's in a verified affidavit. If I said that it wasn't in the record, I believe that's what I was stating. And the original complaint that we attempted to file here isn't in the record either. So we know that it violated the Lake County Rule. Counsel averses because of lack of the ARDC number and his e-mail address. I'm taking his word on that, but there's nothing to verify that in the record. So I guess Fouch would apply to the extent that any ambiguities arising would be ruled in my favor, my clients. I have a one-year-old daughter. She just turned one yesterday. She likes to play on the floor. We have a fake fireplace. Everybody's got one of those these days. She likes to crawl toward it. It's fake. But I still pull her away. I don't want her to go anywhere near the fire. One day she's going to ask me, Dad, how close can I come to that fire without getting burned? She's going to ask me to give her a rule. And I can't give her that. I can't give her a rule. Counsel, your enemy presumes that she has the awareness to ask. At some point, I hope that she does, Judge. I wouldn't put her past her now. She's very bright for a one-year-old. My experience has been they learn before they can talk that they touch something that's hot. Yes. And they pull their hand back in response. So it sounds like your daughter probably may not know necessarily about the dangers of a fireplace, but she would know about the dangers of a hot plate, for instance. Well, I hope she's... I know where you're going with this, so you may continue. I hope she's smarter than her dad. I may have been burned before myself. But, you know, you can envision... Can I come this close? Let the record reflect on sticking my toes out toward a ring of fire. We can't tell her. And you're being asked to decide who it is, too. It would be a judge-made safe harbor, 48-hour safe harbor. And the rule that counsel is proposing says I don't need to really do my homework. I don't need to study the rules. Whatever errors there are on the face of my complaint, I can hand it up. As long as I am outside of that 48 hours, I can rely on the clerk to get back to me and alert me to my errors. Are you arguing basically that the five-day hiatus is a rationale upon which your argument is being made, which is if I give you something within 72 hours, 48 hours, or 120 hours, that I'm home free to the extent that if you find a mistake or an error that results in rejection, that I'm given extra time? Right, no matter where you set that deadline. It could be five days. I don't believe it's a deadline that this court can set. That would be, you know, artificially modifying the statute of limitations to a certain extent. You know, the lesson from Kilpatrick, as I read it, is don't be a late fire. If you do, you better be perfect. You better be right. Now, Kilpatrick is the same local rule. Counsel argued that the cases were different. Respectfully, I disagree. They're a year apart. We're now five years into the e-filing regime. Like I said, it's the very same local rule. It's the very same circuit court. I don't think the lesson from Kilpatrick was, well, 48 hours and one second, and you're good. That's not the way I read Kilpatrick at all. This court was founded in Kilpatrick. The mere submission of a motion for filing does not render it filed. And that was Justice Mullen. And this court was reviewing the last decision. Well, notwithstanding that, you know, the trial court was required to follow Kilpatrick, if you're correct and it's really not distinguishable, we don't have to agree with Kilpatrick. We could change our position. And along with that, can you address counsel's reliance on vision point, that an attorney at stake is relevant and can be considered in a good cause analysis? You know, I'm not going to say that it cannot be considered in a good cause analysis, but I don't think that vision point is the correct analysis to control it. I think Kilpatrick gives us the standard. I don't think we need to resort to vision request. And even if we do have, even if it can be considered, it doesn't rise to the level of abusive discretion because the trial court did not consider it. As you guys actually pointed out, the standard here is abusive discretion. That means that, you know, even if you disagree with what the trial court, with how the trial court ruled, you can't change it. It's that exacting of a standard. And that's directly from Kilpatrick. Are you referring to abusive discretion or something else? I believe I'm, if you're on my committee, you know, in determining whether there's been an abusive discretion, we may not substitute our judgment for that of the circuit court. Nor may we even determine whether the circuit court exercised its discretion wisely or whether this court might have decided the issue differently. It's irrelevant. That's from Kilpatrick. So that's the abuse of discretion. So the answer is abusive discretion. I guess the point I'm trying to make, Judge, is to Justice Burkett's point, even if we can consider the mistake angle from vision quest, the trial court did not abuse its discretion by not considering vision quest. May I interject? You know, you said we don't, nothing in the record supports the contention that the initial error was the lack of the AODC number in email. I mean, I'm looking at, in the appendix, it's AO60. But what it is is the filing rejected paper from the clerk concerning the complaint. And the clerk doesn't specifically say which of the following weren't there. But she referenced the local rule, which includes email address and the AODC number. Counsel put it in his, he averred to it, if you will, within his motion. So isn't that in the record? I don't think anybody contended otherwise below. And I'm not trying to sidetrack the court, Judge. All I'm saying is the local rule requires, I think, four or five different things here. In Kilpatrick, it was the attorney, I believe, entered the attorney code rather than the AODC number. Now, it's possible that that's what happened here. We don't know. That's all I'm saying. So counsel says it was because he didn't put the AODC number on the complaint or the email address. I take him at his word. I don't think it's an issue. That explains why the clerk didn't get back to counsel within 24 to 48 hours, because they didn't have an email address for him. Well, that certainly seems within the realm of possibility, Judge Burkett. But I think, you know, more to the point that you made earlier, you have to put your AODC number on everything. You have to put your email address on everything. This was not a technical rules violation. And it doesn't – I'm sorry. What's the difference between a technical and a non-technical mistake? Well, if I had a computer here, I would break out the e-filing system, and I could show you that it is a perilous electronic system. There are pitfalls. I believe that was kind of one of the points in Kilpatrick was that this was entirely avoidable attorney error. And I know Rule 9 has two subparts. The first part is for technical error, and I guess that's what I'm driving at, Judge McClaren, is – Well, I would call it a practical error. It's kind of hard to communicate with someone by email if you don't have it. Correct. And so it may be technical to the extent that there's a requirement, but there's a practical effect as well, in that it makes it virtually impossible to communicate with the person if they don't have something to identify the proper response that is considered the norm or the protocol. Now, the clerk's office may have other protocols that say that if there is no email, you look for a phone number, but that isn't in the record, I believe, and it's not been argued. So I'm not going to hypothecate, but in any event, when I ask for technical versus practical, I consider the mistake not so much technical. Even though it's a mistake, it puts the party, Mr. Gassman's client, in a position where it impedes the system to be able to notify him in a practically almost immediate proposition to tell him what the mistake is so that he can be as diligent as he can possibly be to try and resolve the problem. If you wear earplugs, you shouldn't expect people to tell you orally what you're doing wrong because you're not going to hear them. I'm sorry, what was that again? Yes, ha, ha, ha. I can't really build on that, Judge McLean. I can't say it any better than you just did. My point here is that this is a rudimentary rule. You can call it a practical rule. You have to check the local rules before you file a complaint, and that, I think, to bring it back, Judge Mullen, to your decision in Kilpatrick, that's the lesson from Kilpatrick. If you're going to be a late filer, you better be perfect. You better do your homework because you're getting closer to that fight. And we can't tell you how close you can come without getting burned. And so that's my takeaway from Kilpatrick, judges. I don't know that I have a lot more to add, except I would say that we've all gotten the 48-hour return emails. That is not gospel. I think it would be very improper and unfair to the clerk's office to say that now they've, by spitting out this automatic notice that says you'll hear back within 24 to 48 hours, I don't think we can have a judgment of rule that says you can rely on that. You can rely. And now the burden's on them. All too frequently, you know, I have gotten, I know it's outside the record, but it's not an exact science. And it just is consistent with the larger point that I'm making about how there's no way that we can make a judge-made rule that's a safe harbor provision that's going to tell all the litigants in Illinois exactly how close you can come. And as long as you file before that point, copacetic, I think that would be an improper rule in court. If you have no further questions, I'll relinquish the rest of my time. Thank you.  No, thank you, Counselor. Thank you. Thank you. Mr. Gaskin, you may proceed with the vote.   Just a few points I'd like to address. Excuse me. One of them has to do with whether the clerk could contact me without the e-mail address being on my complaint. The system itself, however the clerk responds, I don't know what goes on in their office, how it actually physically works, but the system itself has my e-mail address. That's how I immediately upon filing, I get an e-mail from the system that says, the clerk will let you know within 24 to 48 hours whether it's been accepted or rejected. So the e-mail, their ability to contact me is there. When I ultimately received the rejection, it came the same way. So I think, you know, yes, the e-mail should have been on the complaint, but that does not preclude the clerk through the Odyssey system from notifying a party as to whether their pleading is accepted or rejected. Excuse me. Toward the beginning of Mr. Harris' argument, and this goes back to the 103B issue, he stated that 103B was raised like basically a blurb at the end of his motion, but that had to do with, it did not have to do with service of process. His reference to 103B in the motion had to do with being diligent and following up with the court, not a service of process issue. And in relation to that, being diligent and following up with the court, I think Mr. Harris questioned whether there was an affidavit or some other attestation by me in the record as to whether I did call the clerk, and there is, you can find that on page C294 of the record. In your motion? I'm sorry? In your motion. It would have been attached to a motion below. So C-H-C-294 is part of an affidavit that I submitted to the lower court. In support of your motion? In support, correct. It was either in support of a motion or in support of a response. I don't recall exactly, but it was in support of a filing below. Paragraph 5, November 2nd, I called the Lake County clerk. So it is in the record. Again, for the sake of trying not to be repetitive, I believe this case is under the totality of circumstances, different from Kilpatrick, different from Mateos. This was not a last second or a midnight filing. We had five days to cure if we had known there was a problem. I'm not saying, you know, the burden is on the clerk to fix all our mistakes, but if the clerk is going to tell the litigant, we'll let you know within 24 to 48 hours if it's accepted, that should be meaningful. Otherwise, what is the point in including that? Again, that's blaming the clerk. And I need provides that you're responsible for the content. I recognize that. And the accuracy. I recognize that. I'm just thinking that in this.  I'm not trying to shift the blame. Well, it sounds like you are. I'm just stating the facts of this case, and I think this is different from other cases this court has considered, and I would ask the court to reverse the lower court's decision. Thank you. I appreciate your time. Thank you. We'll take the case under advisement. There are no other cases on the call. The court is adjourned.